IN THE SUPREME COURT OF MISSISSIPPI

NO. 2012-KA-00789-SCT

*DAVID WAITS*

*v.*

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT:              02/08/2012
TRIAL JUDGE:                   HON. L. BRELAND HILBURN
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                               BY:  JUSTIN TAYLOR COOK
                                    GEORGE T. HOLMES
ATTORNEYS FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                               BY: LAURA HOGAN TEDDER
                                    JOHN R. HENRY, JR.
DISTRICT ATTORNEY:             ROBERT SHULER SMITH
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED IN PART; REVERSED IN PART
                               AND REMANDED - 08/15/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.    David Waits was indicted by a grand jury in Hinds County, Mississippi, on one count

of deliberate-design murder of Wavious McGee.[1] The indictment also charged Waits with

---

[1] Three spellings of McGee's name are in the record:
1.    The Mississippi State Medical Examiner's Office Autopsy Report
      spells McGee's name: "Wavious."
2.    The indictment spells McGee's name: "Wavoius"
3.    The trial transcript spells McGee's name: "Waivous"
We use the spelling contained in the autopsy report.

a sentence enhancement for using a firearm during the commission of a felony, pursuant to Mississippi Code Section 97-37-37 (Supp. 2012). A Hinds County jury found Waits guilty of manslaughter.

¶2.     According to the sentencing order, the trial judge sentenced Waits to twenty years imprisonment for the manslaughter conviction. Included within the sentencing order is the notation: "ENH (GUN) 97-37-37."

¶3.     We affirm Waits's manslaughter conviction and his twenty-year sentence for that conviction. But, because the jury did not specifically find Waits guilty of using a firearm in the commission of the crime of manslaughter, we reverse the trial court's sentence enhancement and remand this case to the trial court, with the instruction that the gun-enhancement notation be struck from the sentencing order.

## STATEMENT OF THE FACTS

¶4.     Late in the evening, on April 8, 2010, Latasha Beasley, her fiancé, Wavious McGee, Jennifer Graves, and Piere Lacy drove to a gas-station convenience store located on the corner of Bailey Avenue and Woodrow Wilson, in Jackson, Mississippi. According to the State's evidence, Lacy exited the vehicle and began walking toward the store. Lacy passed by Waits, who, according to Lacy, said "he had some good weed to sell." Lacy replied, "No, I don't smoke." McGee then exited the vehicle and went inside the store with Lacy. McGee handed Lacy some money for cigarettes and left the store.

¶5.     According to Beasley, after McGee exited the store, she saw McGee speak to Waits and shake Waits's hand. Beasley testified that she knew Waits because her mother had helped raise Waits's sister, Carlena Waits. Beasley said she did not know whether Waits and

2

McGee knew each other. When McGee got back in the car, Beasley asked McGee, "what was he talking to David about." McGee said Waits had asked him if he wanted to buy some truck rims. Beasley told McGee to call Waits over to the car. McGee was sitting in the front passenger seat, and Beasley was sitting in the driver's seat. Waits approached Beasley on the driver's side and they talked. McGee moved Lacy's gun, which was sitting out, under the seat. Waits asked if McGee was pulling a gun on him. McGee did not respond, but Beasley told Waits, "No, David, he's not pulling a gun on you." Speaking to the "guys" Waits was with, Waits said, "Bro, this man just pulled a gun on me." The guys asked Waits who he was talking about. Beasley told Waits again that McGee had not pulled a gun on him. Waits walked away and then returned to McGee's side of the car. According to both Beasley and Graves, McGee got out of the car and put his hands up in the air. McGee told Waits that he (McGee) had no reason to pull a gun on him (Waits).

¶6.    At that point, Lacy exited the store. Lacy recalled hearing "a lot of loud talking." Lacy saw McGee standing by the car with his hands up and Waits standing nearby holding a gun. Lacy testified that Waits pulled the gun's trigger, and the gun "clicked." Lacy then ran towards Waits and tried to grab the gun. Waits shoved Lacy away and began shooting at McGee. Lacy said Waits shot McGee "[o]ver fifteen" times. Waits then left the scene.

¶7.    The Jackson Police Department and paramedics were called, and McGee was pronounced dead at the scene. The police recovered sixteen spent shell casings at the scene, and investigators recovered a firearm located between the passenger seat and the middle console of McGee's vehicle. None of the shell casings found at the scene matched McGee's gun.

3

¶8.     Dr. Feng Li, a forensic pathologist, performed an autopsy on McGee. Dr. Li testified that McGee died of multiple gunshot wounds. His injuries included injury to the heart, both lungs, liver, stomach, pancreas and thoracic aorta. Dr. Li testified that he recovered only three bullets from McGee's body, but there were twenty-five individual gunshot wounds, and it was possible that all wounds came from sixteen or seventeen shots fired. Dr. Li also said that McGee had a blood alcohol level of 0.31.

¶9.     Waits provided a statement to authorities shortly after he was arrested, in which he said that McGee had pulled a gun on him. At trial, Waits claimed that he shot McGee in self-defense after McGee pointed a gun at him. Waits testified that he did not know Beasley and had never seen her before that evening. Waits stated also that he thought, but was not sure, that he knew McGee as someone who hung around a person known by the name as Chill Will. According to Waits, Will had shot him (Waits) in 2004. Waits further stated that he (Waits) and McGee had never had any previous conflicts.

¶10.     The jury found Waits guilty of manslaughter. The trial court sentenced Waits to twenty years' imprisonment for the manslaughter conviction, which is the maximum sentence allowed under Mississippi Code Section 97-3-25. The sentencing order also contains a sentence-enhancement notation, indicating that Waits was convicted under Section 97-37-37.

¶11.     This appeal followed, raising the following two issues: (1) whether the trial court erred by overruling Waits's motion for a new trial, because the overwhelming weight of the evidence pointed towards excusable homicide in self-defense, and (2) whether Waits's sentence violates the United States Constitution. Additional facts, as necessary, will be related in our discussion of issues.

4

# DISCUSSION

## I. The trial court erred when it overruled Waits's motion for a new trial, because the overwhelming weight of the evidence pointed toward excusable homicide in self-defense.

¶12. Waits argues that the trial court erred when it overruled Waits's motion for a new trial, because the overwhelming weight of the evidence supported excusable homicide based on self-defense. Specifically, Waits claims on appeal that he was acting in necessary self-defense when he shot McGee because McGee was a "severely intoxicated felon" in possession of a gun; and he (Waits) felt threatened by McGee's brandishing a weapon.

¶13. A motion for a new trial challenges the weight of the evidence, and reversal is warranted only if the trial court abused its discretion in denying a motion for a new trial. *Sheffield v. State*, 749 So. 2d 123, 127 (Miss. 1999). "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005). A motion for a new trial should be granted only in "exceptional cases in which the evidence preponderates heavily against the verdict." *Weatherspoon v. State*, 56 So. 3d 559, 564 (Miss. 2011). We review the evidence in a light most favorable to the jury's verdict. *Bush*, 895 So. 2d at 844.

¶14. Here, the jury was instructed on the offense of manslaughter via jury instruction S-7, as follows:

> [I]f you find from the evidence in this case *beyond a reasonable doubt* that:
>
> 1. The Defendant David Waits;

2. On or about April 9, 2010;

3. In the First Judicial District of Hinds County, Mississippi;

4. Did *shoot* and take the life of Wavious McGee, acting on his actual and bona fide belief that such was necessary to protect himself from great bodily harm or death at the hands of [Wavious] McGee, but that such belief by the Defendant was not a reasonable belief under the circumstance;

then you may find the Defendant guilty of the lesser-included offense of manslaughter.

¶15. After viewing all the evidence in a light most favorable to the jury's verdict, we can conclude only that the jury ultimately made a determination from the evidence, and that, even if Waits truly believed shooting McGee was necessary to protect himself from great bodily harm or death at the hands of McGee, such a belief was unreasonable under the circumstances. Three witnesses testified for the State that, even though a handgun was located inside the vehicle in which McGee was riding, McGee was standing outside the vehicle, unarmed, with his hands in the air, at the time Waits shot and killed him. The only evidence presented to the contrary was Waits's testimony that McGee was armed and pointing a gun at him when Waits shot McGee. This raised a factual dispute between the State's evidence and Waits's version of events, and it was for Waits's jury to resolve. *See Moore v. State*, 859 So. 2d 379, 385 (Miss. 2003) ("Any factual disputes are properly resolved by the jury and do not mandate a new trial.").

¶16. The jury obviously rejected Waits's testimony and accepted the State's evidence. And Waits fails to demonstrate on appeal how that evidence preponderates against the jury's verdict in this case. Accordingly, we find that this issue is without merit.

6

## II.    Whether Waits's sentence violates the United States Constitution.

¶17.    Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), Waits argues that the firearm sentence enhancement violates his Sixth Amendment right to a trial by jury, because the jury did not specifically find the firearm enhancement separate and apart from finding him guilty of manslaughter. The State, relying on *Johnson v. State*, 44 So. 3d 365 (Miss. 2010), argues that, because the jury was informed through jury instruction S-7, that Waits shot and killed McGee, the State complied with *Apprendi*. We agree with Waits.

¶18.    The rule of *Apprendi* is that, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

¶19.    Waits was indicted for violation of Section 97-37-37(1), which states:

> Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.

Miss. Code Ann. § 97-37-37 (1) (Supp. 2012). At trial, more than sufficient evidence was presented to the jury by both the State and Waits that Waits had shot McGee with the use of a firearm. But the ultimate question of whether Waits had violated Section 97-37-37, as set forth in the indictment, was not decided by the jury beyond a reasonable doubt. None of the jury instructions submitted specifically mentioned the term firearm (or the like), a critical

7

element of Section 97-37-37. Contrary to the State's position, the language contained in jury instruction S-7 did not suffice.

¶20. The instant case is distinguishable from *Johnson v. State*, 44 So. 3d 365 (Miss. 2010). There, Laharrison Johnson was indicted and convicted of armed robbery. Johnson also was charged in the same indictment with violating Section 97-37-37. *Id*. at 366. For the armed-robbery conviction, the trial court sentenced Johnson to seven years, with four years suspended, and supervised probation upon release. *Id*. The trial court also imposed an additional sentence of five years, as prescribed by Section 97-37-37, to run consecutively to the armed-robbery sentence. *Id*. Johnson appealed, claiming that the question of whether he used a firearm during the commission of a felony was never properly submitted to the jury. *Id*. We found the issue meritless, based on the following jury instruction that was submitted to the jury:

> If you find from the evidence in this case beyond a reasonable doubt that:
>
> (1) on or about December 30, 2008, the defendant, Laharrison Johnson, while aiding and abetting or acting in concert with another or others, did willfully, unlawfully and feloniously,
>
> (2) take car speakers, an Ipod, a car stereo amplifier and two guns in good [sic] and lawful money of the United States of America, property of Travis Amos,
>
> (3) from the person or from the presence, and against the will of Travis Amos,
>
> (4) by putting Travis Amos in fear of immediate injury to his person by displaying a deadly weapon, *to-wit; a pistol*,
>
> then you shall find the defendant guilty of Armed Robbery.
>
> If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.

*Id*. at 367 (emphasis added). We found that the jury had decided each element of the enhanced penalty statute when it found Johnson guilty of armed robbery by use of a firearm, and Section 97-37-37 required determination of no other factor that had not already been decided by the jury. *Id*.

¶21. Here, though, the fact that Waits used a firearm during the commission of the felony crime of manslaughter can be inferred only from the evidence, not the jury's findings. Thus, the trial judge was not permitted to enhance Waits's sentence under Section 97-37-37.

¶22. We point out, however, that based on the record before us, it is unclear whether Waits's twenty-year sentence for manslaughter was actually enhanced. Both Waits and the State contend that the trial judge sentenced Waits to a total of twenty-five years in the custody of the Mississippi Department of Corrections–twenty years (the maximum) for the manslaughter conviction and an additional five years under Section 97-37-37. But, the sentencing order merely reads: "It is therefore ordered and adjudged the Defendant, DAVID WAITS for such crime of MANSLAUGHTER 97-3-25, to which he has been found Guilty as Charged, be and hereby is sentenced to serve a term of 20 YEARS in the custody of the [MDOC]." And at the top of the order, next to Waits's date of birth and social security number, is simply the notation: "ENH (GUN) 97-37-37." We also point out that, according to the trial transcript, immediately after the jury found Waits guilty of manslaughter, the trial judge announced in open court: "It will be the sentence of the Court that you be remanded to the custody of the Department of Corrections for a period of twenty years." The State then informed the trial judge that Waits had a gun-enhancement charge. The trial judge replied, "the [c]ourt will retain jurisdiction over that for argument . . . ."

9

¶23.    Ordinarily, the uncertainty found in the sentencing order would require clarification from the trial court.  But, having found that the trial court was not permitted to enhance Waits's sentence under Section 97-37-37, we instead reverse Waits's sentence in part and remand for the trial court to strike the gun-enhancement reference from the sentencing order.

**CONCLUSION**

¶24.    We affirm the judgment of conviction for manslaughter and Waits's twenty-year sentence.  We vacate Waits's sentence in part and remand to the Hinds County Circuit Court with the instruction that the trial court strike the gun-enhancement reference from the sentencing order.

¶25.    **CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE ENHANCEMENT FOR USE OF A FIREARM UNDER SECTION 97-37-37 IS REVERSED AND THE CASE IS REMANDED FOR THE TRIAL COURT TO STRIKE THE GUN ENHANCEMENT FROM THE SENTENCING ORDER.**

    **WALLER, C.J., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCURS. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.**

    **DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶26.    The majority correctly affirms Waits's conviction.  But, because I do not believe the firearms enhancement violated Waits's Sixth Amendment right to trial by jury – and because I see no need to remand this case – I concur in part and dissent in part.

¶27.    It is well-settled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

jury, and proved beyond a reasonable doubt."[2] The majority finds that the firearm enhancement was not decided by a jury beyond a reasonable doubt because "none of the jury instructions submitted specifically mention the term firearm (or the like), a critical element of Section 97-37-37."[3] The majority further finds that Jury Instruction S-7 was insufficient to submit this issue to the jury.[4] I disagree.

¶28.   Jury Instruction S-7 – the only manslaughter instruction given to the jury – required the jury to find the use of a firearm beyond a reasonable doubt. Specifically, it stated:

> [I]f you find from the evidence in this case beyond a reasonable doubt that:
>
> 1. The Defendant David Waits;
>
> 2. On or about April 9, 2010;
>
> 3. In the First Judicial District of Hinds County, Mississippi;
>
> 4. Did *shoot* and take the life of Waivous McGee, acting on his actual and bona fide belief that such was necessary to protect himself from great bodily harm or death at the hands of McGee, but that such belief by the Defendant was not a reasonable belief under the circumstance;
>
> then you may find the defendant guilty of the lesser-included offense of manslaughter.[5]

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[3] Maj. Op. at ¶ 19.

[4] *Id.*

[5] (Emphasis added.)

11

¶29.    At trial, Waits admitted to shooting McGee with his own gun.  And, the medical examiner testified that McGee had received twenty-five individual gunshot wounds.  So, based on this evidence, the manslaughter instruction, and the fact that the jury convicted Waits of manslaughter, the jury, by necessity, must have found that Waits used a firearm to cause McGee's death.  While perhaps preferable, I see no requirement that the jury instruction include the word "gun" or "firearm."  I would affirm Waits's enhanced sentence.

**RANDOLPH, P.J., JOINS THIS OPINION.**