FAIR, J.,
for the Court:
¶ 1. Bernard Hubbard was convicted of gratification of lust and sexual battery relating to separate incidents of sexual contact with “Abby,” who was regarded as his stepdaughter.[1] Hubbard appeals, asserting that the trial court erred in admitting evidence concerning two prior convictions for gratification of lust with other children. We find no error and affirm.
FACTS
¶ 2. Abby testified that when she was eight years old, Hubbard began kissing her and touching and licking her genitals. After this continued for some period of time, he vaginally raped her, and she reported the abuse to a gym teacher. Abby was removed from her mother’s custody, but she was returned after a no-contact order was issued to prevent Hubbard from seeing her. However, the mother — who did not believe Abby — disregarded the court order and allowed Hubbard to visit and stay with them. Eventually, Hubbard resumed molesting Abby. The abuse apparently ended only after Abby’s aunt reported that Hubbard was continuing to have contact with Abby.
¶ 3. Hubbard was tried under two indictments. The first, returned in 2009, charged him with gratification of lust for acts committed in July 2008, when Abby was eleven years old; the second, returned in May 2010, charged Hubbard with sexual battery for acts committed in March 2010, after Abby’s initial disclosure of the abuse, when Abby was thirteen years of age.
DISCUSSION
1. Prior Bad Acts
¶ 4. The prosecution successfully moved to introduce the testimony of two women who had been molested by Hubbard when they were children. One of the victims was Hubbard’s daughter, and the other was the, child of a woman whose sister Hubbard was dating. In both cases, Hubbard was initially charged with capital rape and ultimately pled guilty to gratification of lust. Both victims described how Hubbard progressed from groping them and touching or licking their genitals to raping them. Both described how Hubbard had bribed them or used threats and extorted promises to prevent them from disclosing the abuse. One testified that Hubbard had invoked God in these efforts *1183 in a way similar to that described by the victim in this case.
¶ 5. In Derouen v. State, 994 So.2d 748, 756 (¶¶ 19-20) (Miss.2008), the Mississippi Supreme Court held that in child sex abuse cases, evidence of the defendant’s prior sexual offenses involving other victims is not per se inadmissible. Instead, such evidence may be admitted if proper “under [Mississippi Rule of Evidence] 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury.” Id. at (¶ 20).
¶ 6. In this case, the prosecution argued that the evidence of Hubbard’s prior offenses against children was admissible to prove “motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake.” The trial judge agreed. On appeal, Hubbard does not attempt to argue against the decision on the merits. Instead, he contends that the trial judge failed to consider the prejudice to him and weigh it against the probative value of the testimony; he alleges that the trial judge failed to conduct a Rule 403 balancing test.
¶ 7. This claim is flatly belied by the record. The trial judge held a hearing, where she heard proffers from both prior victims, and she heard extensive argument from the defense and prosecution. The judge then recited the legal standard at length and explicitly found on the record that the proffered testimony was more probative than prejudicial. She explained in detail why she found the evidence probative and discussed the potential for prejudice, which she found would be ameliorated by cautionary instructions. The cautionary instructions were, in fact, given. We find no merit to this issue.
2. Sufficiency of the Evidence
 ¶ 8. Hubbard next argues that the guilty verdicts are not supported by sufficient evidence. Our inquiry is whether the evidence shows “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quotation omitted). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 9. Hubbard admits that the victim’s testimony, if believed, was sufficient to support the verdict. But he argues that Abby was not a credible witness because of certain minor inconsistencies in her testimony, some of which are admittedly present — for example, she testified on direct examination that she went to a gym teacher at her elementary school, but on cross-examination, she said it was a middle school. Other asserted inconsistencies are less compelling, such as one-word answers to questions posed with vague or indefinite timeframes, like where Abby answered affirmatively on cross-examination when asked whether she “always” had a babysitter but had previously testified she and her brother were sometimes alone after returning home from school. Otherwise, the record offers little reason to doubt the victim’s testimony. She was generally consistent in her allegations and never wavered on the gravamen of the offenses, other than an initial reluctance to come forward and a subsequent reluctance to reveal the full extent of the abuse. For that she offered detailed explanations of how Hubbard and her mother bullied and manipulated her into silence.
*1184 ¶ 10. The jury, not the reviewing court, assesses witness credibility. Hartfield v. State, 161 So.3d 125, 140 (¶ 23) (Miss.2015). On appeal, we only address whether any rational trier of fact could have found Hubbard guilty beyond a reasonable doubt. Bush, 895 So.2d at 843 (¶ 16). The question must be answered in the affirmative.
3. Weight of the Evidence
¶ 11. Finally, Hubbard argues that the guilty verdict was against the overwhelming weight of the evidence. He makes no new factual argument on this point but simply refers back to his arguments made toward the sufficiency of the evidence.
¶ 12. A new trial based on the weight of the evidence should be granted “only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted). “[T]he evidence must be viewed in the light most favorable to the verdiet[.]” Jenkins v. State, 131 So.3d 544, 551 (¶ 23) (Miss.2013). And the motion for a new trial is entrusted to the circuit judge, who had a firsthand view of the trial. “[R]eversal is warranted only if the trial court abused its discretion in denying [the] motion, for a new trial.” Waits v. State, 119 So.3d 1024, 1028 (¶ 13) (Miss.2013).
¶ 13. As we explained above, the jury is the judge- of the credibility of witnesses. Hartfield, 161 So.3d at 140 (¶ 23). And as the State succinctly points out, there is no competing evidence for the victim’s testimony to be weighed against. We find no merit to this issue. .. -
¶ 14. THE JUDGMENTS OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF GRATIFICATION OF LUST, AND SENTENCE OF FIFTEEN YEARS; AND CONVICTION OF SEXUAL BATTERY, AS A HABITUAL OFFENDER, AND SENTENCE OF FIFTEEN YEARS; WITH BOTH SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER AND IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, JAMES AND WILSON, JJ, CONCUR.

. This Court uses pseudonyms to protect the identify of minor victims of sexual abuse. Abby's mother and Hubbard were not legally married, but they had been together since Abby was very young, had a child together, and had a wedding ceremony in which Abby participated.